24251

CITY OF FOLLY BEACH, Appellant v.
ATLANTIC HOUSE PROPERTIES, LTD., Respondent.

(458 S.E. (2d) 426)

Supreme Court

*Ben Peeples, Peeples & Stringer,* Charleston, *for appellant.*

*Gerald M. Finkel* and *Gilbert Scott Bagnell, Finkel, Goldberg, Sheftman & Altman,* Columbia, and *Thomas R. Goldstein, Belk, Cobb, Chandler & Goldstein,* Charleston, *for respondent.*

Heard Feb. 8, 1995.

Decided June 12, 1995.

TOAL, Justice:

The City of Folly Beach appeals the jury verdict finding a value of $250,000 for Atlantic House Properties' interest in

submerged land condemned by the City. We affirm.

## FACTS

Prior to Hurricane Hugo, Atlantic House Properties owned and operated a restaurant on Folly Beach. The restaurant was built on stilts over the ocean. Customers parked on the adjacent high lots and entered the restaurant via a boardwalk. Hugo destroyed the restaurant, leaving only the pilings.

After Hurricane Hugo, the City of Folly Beach entered into an agreement with the United States Corps of Engineers whereby the Corp of Engineers would provide federal funds for beach renourishment. As part of the agreement with the Corps of Engineers, the City of Folly Beach was required to gain title to the land to be renourished.

On September 25, 1992, the City filed its Condemnation Notice Tender of Payment. The Condemnation Notices named Atlantic House Properties, Ltd. as the owner of record of certain property below the mean high water mark. The Condemnation Notices tendered $0 as compensation. Atlantic House answered and asserted its right to a jury trial. Subsequent to the condemnation but prior to trial, the City purchased the adjacent high land from Atlantic House for $290,000.

At trial the parties presented expert testimony as to the value of Atlantic Houses' interest in the property below the mean high water mark. During jury deliberations, in response to a question from the jury regarding appraisals the parties stipulated that the valuation testimony could be summarized to the jury as follows: The City's expert testified Atlantic's interest in the property was worth $31,000 while Atlantic Houses' expert testified the value was $642,500. The jury returned a verdict in favor of Atlantic House for $250,000. The City appeals.

## LAW/ANALYSIS

The City contends the owner of submerged land is not entitled to compensation when the owner has been fully compensated for the adjacent high land.

The City bases its argument on *Horry County v. Tilghman*, 283 S.C. 475, 322 S.E. (2d) 831 (Ct. App. 1984). In *Tilghman*, Horry County condemned an island located in Little River for the purpose of improving navigation in the river. The Tilgh-

mans sought compensation for accretion to the island which occurred after the condemnation. The Court of Appeals held Horry County became the riparian owner for the purpose of accretion after the condemnation. As an alternative holding, the Court of Appeals held any interest the Tilghman's had in the submerged land could be taken without compensation as the purpose of the taking was to aid navigation.

Unlike *Tilghman*, the City purchased the adjacent high land from Atlantic House after the condemnation. The value of the interest in land is to be determined at the time of condemnation. *South Carolina Highway Department v. Carodale Assoc.*, 268 S.C. 556, 235 S.E. (2d) 127 (1977). Thus, the subsequent purchase by the City of the adjacent high ground does not affect the value of the condemned property at the time of condemnation. Finally, *Tilghman*'s alternative holding that no compensation is due for submerged lands when the purpose of the taking is to aid in navigation is inapplicable when the public purpose is not in aid of navigation.[1] Here, the public purpose is beach renourishment and not in aid of navigation.

The City admits Atlantic House is a unique piece of property. It is the only known beach front parcel exempt from the Beach Front Management Act. S.C. Code Ann. § 48-39-290(E) (1993). At the time of the condemnation, Atlantic House could have rebuilt the restaurant.[2] The City's own expert testified Atlantic House held a compensable interest in the condemned property. The dispute presented to the jury was the value of that interest. Although the experts differed as to the value of the property, the jury was free to determine the value within the range of the evidence presented at trial. *Pelican Bldg. Centers v. Dutton*, 311 S.C. 56, 427 S.E. (2d) 673 (1993). The City's appraiser testified the

---

[1] For a discussion of governmental powers over the bed of the stream for the purpose of importing navigation. *See Early v. South Carolina Public Service Authority*, 288 S.C. 392, 90 S.E. (2d) 472 (1955). The rule cited in *Early* and in *Tilghman* is limited to the public purpose of improving navigation. *See* 2 Julius L. Sackman and Patrick K. Rohan, *Nichols' The Law of Eminent Domain* § 5.33 (3rd ed. 1995).

[2] The City denied Atlantic House a permit to rebuild. Atlantic appealed to the circuit court. The circuit court held the City erred in failing to grant Atlantic House a variance to rebuild the restaurant. The City did not appeal that ruling.

value of Atlantic House's interest in the property was $31,000 while one of Atlantic House's appraisers testified the property's value was $642,000. The record reflects both appraisers encountered difficulty in determining the value of the property because of the unique nature of Atlantic House's ability to rebuild the restaurant below the mean high water mark. We find no error in the jury finding the value to be $250,000. The unique nature of the property coupled with expert testimony as to its value allowed the jury to determine the fair market value of the property within the range of evidence presented at trial. AFFIRMED.

FINNEY, C.J., MOORE and WALLER, JJ., and A. LEE CHANDLER, Acting Associate Justice, concur.